PEOPLE v PATTON

Docket No. 283921. Submitted July 15, 2009, at Detroit. Decided July 30, 2009, at 9:05 a.m.

Joseph A. Patton was in a federal prison when the Oakland County Prosecuting Attorney lodged a detainer for an untried embezzlement charge against him. The defendant eventually pleaded no contest to the embezzlement charge in the Oakland Circuit Court on the condition that he be allowed to appeal, and the court, Steven N. Andrews, J., sentenced him to 23 months to 10 years of imprisonment. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The federal authorities' failure to timely inform the defendant of the detainer violated article III(c) of the Interstate Agreement on Detainers (IAD), MCL 780.601. However, because the IAD mandates a dismissal in only three circumstances and none of them involves a violation of article III(c), the defendant is not entitled to have his conviction vacated or the embezzlement charge dismissed.

2. The defendant was not denied his constitutional right to a speedy trial. The defendant argued that the 3½-year delay between the date of the criminal complaint and arrest warrant against him and the date the detainer was lodged was sufficient to show a constitutional violation. However, the time for judging whether the right to a speedy trial has been violated runs from the date of arrest, and the defendant's claim was based on a period of delay that preceded his arrest.

3. The defendant was not denied due process because of prearrest delay. The defendant did not show actual and substantial prejudice to his right to a fair trial, nor did he show an intent by the prosecution to gain a tactical advantage, with respect to the delay.

4. The defendant is not entitled to credit against his sentence for embezzlement for time served from the date a detainer could have been lodged against him. Under MCL 769.11b, a defendant is only entitled to sentence credit for time served as a result of being denied or unable to furnish bond for the offense of which the

defendant is convicted. The defendant properly received credit for time served from the date he was transferred to the custody of Michigan authorities for proceedings on the embezzlement charge of which he was convicted.

Affirmed.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, and *Janice A. Kabodian*, Assistant Prosecuting Attorney, for the people.

*Bart R. Frith* for the defendant.

Before: TALBOT, P.J., and FITZGERALD and HOEKSTRA, JJ.

PER CURIAM. Defendant appeals by delayed leave granted his conditional no-contest plea to embezzlement of over $20,000, MCL 750.174(5)(a). Defendant was sentenced to 23 months to 10 years' imprisonment. Defendant was not "promptly inform[ed]" when the prosecution lodged a detainer against him. However, because the Interstate Agreement on Detainers does not provide for dismissal of a criminal charge for a violation of Article III(c), defendant is not entitled to have his conviction vacated and the embezzlement charge dismissed. In addition, defendant was not denied his constitutional right to a speedy trial, nor was he denied due process because of prearrest delay. Defendant is also not entitled to sentence credit for time served from the date a detainer could have, or was, lodged against him. Accordingly, we affirm defendant's conviction and his sentence.

I. SUMMARY OF THE FACTS

From January 1, 2002, to June 30, 2002, defendant embezzled more than $20,000 from Federal Mogul. In

October 2002, a criminal complaint was filed in Oakland County and a warrant was issued for defendant's arrest; however, the prosecution was not able to locate defendant.

The prosecution eventually learned that defendant was incarcerated in a federal penitentiary in Kentucky and lodged a detainer against him on February 23, 2006. However, federal authorities failed to inform defendant of the detainer until August 28, 2006, at which time defendant requested a final disposition of the embezzlement charge. Defendant was transferred to the custody of Michigan authorities on November 6, 2006. After the trial court denied defendant's motion to dismiss, defendant pleaded no contest to the embezzlement charge. Defendant reserved the right to appeal the trial court's order denying his motion to dismiss.

## II. INTERSTATE AGREEMENT ON DETAINERS

Defendant asserts that his conviction must be vacated and the embezzlement charge dismissed because of a violation of the Interstate Agreement on Detainers (IAD), MCL 780.601. Specifically, defendant contends that because the federal authorities failed to timely inform him of the detainer, he was prevented from demanding a speedy resolution of the charge. We disagree. The interpretation and application of a statute is a question of law that we review de novo. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

" 'Forty-eight States, [including Michigan,] the Federal Government, and the District of Columbia . . . have entered into the Interstate Agreement on Detainers . . . .' " *People v Swafford*, 483 Mich 1, 8; 762 NW2d 902 (2009), quoting *Alabama v Bozeman*, 533 US 146, 148; 121 S Ct 2079; 150 L Ed 2d 188

(2001). The purpose of the IAD is to facilitate the prompt disposition of outstanding charges against an inmate incarcerated in another jurisdiction. *People v Meyers (On Remand)*, 124 Mich App 148, 154; 335 NW2d 189 (1983). "Once a detainer is filed, it is then that the IAD is triggered and compliance with the provisions of the agreement is required." *People v Gallego*, 199 Mich App 566, 574; 502 NW2d 358 (1993).[1]

Article III(c) of the IAD provides:

> The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

It is uncontested that defendant was not notified of the February 2006 detainer until August 28, 2006. We agree with defendant that because he was not informed of the detainer until six months after it was lodged against him, he was not "promptly inform[ed]" of the detainer.

The IAD expressly requires dismissal of a criminal charge in three circumstances:

> (1) if, after a prisoner has made the required request pursuant to Article III, trial does not occur within the required 180 days;
>
> (2) when trial does not occur before the prisoner, having been transferred to the receiving state, is sent back to the sending state; or

---

[1] There is no exact definition of the term "detainer," but "it has generally been recognized to mean written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state." *Gallego, supra* at 574. The prosecution does not dispute that it lodged a detainer against defendant on February 23, 2006.

(3) when the receiving state fails or refuses to accept temporary custody of the prisoner. [*Lara v Johnson*, 141 F3d 239, 243 (CA 5, 1998), mod 149 F3d 1226 (CA 5, 1998).]

See Articles IV(e) and V(c) of the IAD; see also *Swafford, supra* at 3-4 (the IAD requires dismissal of the charge when the prosecution fails to bring the defendant to trial within 180 days of receiving the defendant's request for a final disposition). However, "[t]he IAD does not expressly provide for a remedy in cases involving a violation of Article III(c)." *People v Marshall*, 170 Mich App 269, 277; 428 NW2d 39 (1988); see also *United States v Lualemaga*, 280 F3d 1260, 1264 (CA 9, 2002).

In *Schin v State*, 744 SW2d 370 (Tex App, 1988), the defendant, who was incarcerated in an Arizona prison when he received a warrant from Texas for his arrest, argued that the Texas indictment should be dismissed because Arizona authorities, contrary to Article III(c) of the IAD, failed to provide him with the necessary forms to request a final disposition of the indictment. The Texas Court of Appeals, after surveying relevant case-law, concluded:

> [T]he receiving state's charges should not be dismissed except as expressly allowed under the IAD. Inasmuch as the legislature chose to specify situations when dismissal is the appropriate remedy, the courts should not expand that relief to cover possible procedural errors made by another state's prison officials. . . . Although we may sympathize with appellant, we find no authority in the statute to warrant dismissal of the Texas offenses. [*Id.* at 374.]

The Fifth Circuit Court of Appeals, in *Lara, supra* at 243 n 4, agreed with the reasoning in *Schin*. It stated that "dismissal because of negligence on the part of the sending state is not a part of the IAD," and, therefore, it "agree[d] . . . that it would be inappropriate for the

federal courts to judicially expand the list of situations in which dismissal is dictated." *Id.* at 243. The Sixth, Eighth, Ninth, and Eleventh circuits have also held that because the IAD expressly mandates dismissal in only three circumstances, which do not include a sending state's violation of Article III(c), dismissal is not an appropriate remedy for such a violation. *United States v Robinson*, 455 F3d 602, 606 (CA 6, 2006); *United States v Walker*, 255 F3d 540, 542-543 (CA 8, 2001); *Lualemaga, supra* at 1263-1265; *United States v Pena-Corea*, 165 F3d 819, 821-822 (CA 11, 1999).[2]

The construction of the IAD presents a federal question. *People v Bowman*, 442 Mich 424, 428; 502 NW2d 192 (1993). We are not bound by the decisions of the Fifth, Sixth, Eighth, Ninth, and Eleventh circuits, *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004), in determining whether the failure of federal authorities to "promptly inform" defendant of the detainer requires us to vacate his conviction and dismiss the embezzlement charge. However, we may follow the decisions of lower federal courts if we find the analyses and conclusions persuasive. *Id.* at 607. The decisions from the five federal circuits comport with our rules of statutory interpretation. See, e.g., *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004) (if the language of a statute is clear and unambiguous, the Legislature is presumed to have intended its plain meaning and we must enforce the statute as written); *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002) (we may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the stat-

---

[2] See also, e.g., *State v Reynolds*, 218 Neb 753, 761-762; 359 NW2d 93 (1984); *Commonwealth v Gonce*, 320 Pa Super 19, 28; 466 A2d 1039 (1983); *State v Clark*, 222 Kan 65, 68-69; 563 P2d 1028 (1977).

ute). Consequently, we find the analyses and conclusions of the five federal circuits persuasive, and we choose to follow them. Because the IAD expressly provides for the remedy of dismissal for certain violations but not for a violation of Article III(c), defendant is not entitled to have his conviction vacated and the embezzlement charge dismissed.[3]

### III. SPEEDY TRIAL

Defendant next argues that he was denied his constitutional right to a speedy trial. Specifically, defendant contends that the 3½-year delay from October 2002, when the prosecution filed a criminal complaint against him and an arrest warrant was issued, until February 2006, when the prosecution lodged a detainer, is sufficient to show a constitutional violation. Defendant also contends that although prejudice is presumed because of the length of the delay, he suffered actual prejudice to his person and to his defense.[4] However, defendant is mistaken in asserting that the relevant delay for determining whether he was denied a speedy trial began when the criminal

---

[3] We note that this Court has previously addressed whether a violation of Article III(c) requires dismissal of a criminal charge. See *Marshall*, *supra*; *People v Office*, 126 Mich App 597; 337 NW2d 592 (1983); *People v Bentley*, 121 Mich App 36; 328 NW2d 389 (1982). However, because the opinions in those cases were issued before November 1, 1990, they are not binding precedent. MCR 7.215(J)(1).

[4] The United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). In determining whether a defendant has been denied the right to a speedy trial, a court must consider and balance: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Id.* at 261-262. Prejudice is presumed where the delay is 18 months or more, and the prosecutor has the burden to show that there was no injury. *Id.* at 262. Where the delay is less than 18 months, the defendant must prove prejudice. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003).

complaint and arrest warrant were issued and ended when the detainer was lodged. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006), citing *United States v Marion*, 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971); see also *People v Walker*, 276 Mich App 528, 541; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008). Here, the time frame relied on by defendant preceded his arrest on November 6, 2006. Consequently, the 3½-year period that defendant uses to claim a speedy trial violation is not recognized as a period during which a speedy trial violation occurs. Nor may the events that occurred during that period form the basis for establishing prejudice to defendant. Defendant has not established that he was denied a speedy trial.

#### IV. DUE PROCESS

Defendant next argues that the prosecution's "lack of a diligent investigation" into his whereabouts denied him due process, because he was not able to exercise his right to a speedy trial or to procure defense witnesses. We disagree. Constitutional questions are reviewed de novo. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).[5]

> Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested. Rather, the guideline is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process. [*People v Anderson*, 88 Mich App 513, 515; 276 NW2d 924 (1979) (citations omitted).]

---

[5] To the extent that defendant is arguing that because he was denied a speedy trial, he was necessarily denied due process, the argument is without merit. Defendant was not denied a speedy trial.

"Before dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage." *People v Crear*, 242 Mich App 158, 166; 618 NW2d 91 (2000), overruled in part on other grounds *People v Miller*, 482 Mich 540 (2008). Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected. *People v Adams*, 232 Mich App 128, 135; 591 NW2d 44 (1998). " '[A]ctual and substantial' prejudice requires more than generalized allegations." *Id.* If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted. *People v Cain*, 238 Mich App 95, 109; 605 NW2d 28 (1999).

Defendant has presented no evidence that the delay by the prosecution in learning his whereabouts was an attempt to gain a tactical advantage. Moreover, defendant only generally alleges that the prearrest delay prevented him from contacting former, unnamed co-workers because his former employer was no longer in business and its headquarters had been vacated. However, defendant does not provide any detail on the substance of any possible defense to the embezzlement charge, nor does he provide any detail regarding how his former coworkers could have supported a defense. By not identifying any specific prejudice, defendant has not established "actual and substantial" prejudice. Accordingly, defendant was not denied due process because of the prearrest delay.[6]

---

[6] Defendant also argues that the 3½-year delay should have resulted in the loss of jurisdiction by the trial court. Defendant relies on *People v Dubis*, 158 Mich App 504; 405 NW2d 181 (1987). However, *Dubis* is

Finally, defendant argues that he is entitled to credit for time served from the date a detainer could have been lodged against him. Defendant claims that this date is October 25, 2002, when the warrant for his arrest was entered into the Law Enforcement Information Network (LEIN). At the very least, defendant claims that he is entitled to credit for time served from February 23, 2006, the date plaintiff lodged a detainer against him. We disagree. We review de novo a defendant's claim that he is entitled to sentence credit. *People v Givans*, 227 Mich App 113, 124; 575 NW2d 84 (1997).

MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

A defendant is only entitled to sentence credit for time served as a result of being denied or unable to furnish bond "for the offense of which he is convicted." *People v Adkins*, 433 Mich 732, 742, 746; 449 NW2d 400 (1989); *People v Prieskorn*, 424 Mich 327, 343-344; 381 NW2d 646 (1985). When a defendant is incarcerated in another jurisdiction, "whether a hold has, or could have, entered against the defendant is irrelevant for purposes

inapposite to the present case. In *Dubis*, the trial court lost jurisdiction to sentence the defendant because, contrary to statute, the trial court delayed the defendant's sentencing for more than one year. *Id.* at 506-507. The delay of which defendant is complaining did not occur between the date of his no-contest plea and his sentencing date. Defendant's argument is without merit.

of determining how much time the defendant has served 'for the offense of which he is convicted.' " *Adkins, supra* at 748.

Defendant received 113 days' credit for time served from November 6, 2006, the date he was transferred to the custody of Michigan authorities, to February 27, 2007, the date he was sentenced. Before November 6, 2006, defendant was in the custody of federal authorities for his conviction of bank robbery. His incarceration in the federal penitentiary was not the result of his being denied or unable to furnish bond for the embezzlement charge. Accordingly, defendant is not entitled to sentence credit for time served from the date a detainer could have, or was, lodged against him. *Id.*[7]

Affirmed.

---

[7] Defendant also claims that sentence credit, even if not specifically authorized by MCL 769.11b, may be awarded on "a due process theory." However, a review of the three cases cited by defendant shows that none of the three defendants was awarded sentence credit under a due process theory. In *People v Parshay,* 104 Mich App 411, 414-418; 304 NW2d 593 (1981), and *People v Cohen,* 35 Mich App 706, 708-709; 192 NW2d 652 (1971), sentence credit was awarded under a "liberal" construction of MCL 769.11b. The Supreme Court rejected this "liberal" construction of MCL 769.11b in *Adkins* and *Prieskorn.* In *People v West,* 100 Mich App 498, 500-501; 299 NW2d 59 (1980), the Court's discussion about sentence credit is dictum, because the Court held that the trial court, by improperly delaying sentence, lost jurisdiction to sentence the defendant.